# EXHIBIT 4

# Zavalkoff-Babej, Erin

| | |
|---|---|
| **From:** | Zavalkoff-Babej, Erin |
| **Sent:** | Tuesday, June 29, 2010 6:41 PM |
| **To:** | 'john.maher@ngsc.org' |
| **Subject:** | I updated the background in the prepetition wage motion as per our discussion. It is attached |
| **Attachments:** | 10439073.DOC |

WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, New York 10019
(212) 237-1000
Charles E. Simpson (csimpson@windelsmarx.com)

Proposed Attorneys for North General Service Corporation,
North General Hospital and North General Diagnostic and Treatment Center
Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                        :
                                                             :
NORTH GENERAL SERVICE CORPORATION,                           :   Chapter 11
                                                             :   Case No. 10-
              Debtor                                         :
                                                             :
------------------------------------------------------------x
In re                                                        :
                                                             :
NORTH GENERAL HOSPITAL,                                      :   Chapter 11
                                                             :   Case No. 10-
              Debtor.                                        :
                                                             :
------------------------------------------------------------x
In re                                                        :
                                                             :
NORTH GENERAL DIAGNOSTIC AND                                 :   Chapter 11
TREATMENT CENTER,                                            :   Case No. 10-
                                                             :
              Debtor.                                        :
                                                             :
------------------------------------------------------------x

**DEBTORS' MOTION FOR AN ORDER (A) (i) AUTHORIZING BUT NOT REQUIRING PAYMENT OF PRE-PETITION WAGES AND RELATED OBLIGATIONS, (ii) AUTHORIZING REIMBURSEMENT OF PRE-PETITION EMPLOYEE BUSINESS EXPENSES, AND (iii) HONORING OF OTHER PRE-PETITION EMPLOYEE BENEFITS; (B) AUTHORIZING PAYMENT OF OBLIGATIONS RELATED TO MEDICAL PROVIDERS; AND (C) AUTHORIZING AND DIRECTING BANKS TO HONOR CHECKS WITH RESPECT THERETO**

North General Service Corporation ("Corporation"), (North General Hospital ("North

General") and North General Diagnostic Treatment Center ("D&TC"), as debtors and debtors-in-possession (collectively the "Debtors"), by and through their undersigned counsel, hereby move this Court for entry of an order, pursuant to §§ 105, 363(b), 507(a)(4), 507(a)(5), and 507(a)(8) of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), (a) authorizing, but not requiring the Debtors, in their sole discretion, to (i) honor and pay accrued but unpaid prepetition wages, salaries, commissions, bonuses, withholding taxes, garnishments and employee benefits to, or on behalf of, the Employees (defined below) in accordance with existing company policies and practices established before the Petition Date (defined below), (ii) reimburse pre- Petition Date Employee business expenses (including tuition reimbursement) and (iii) perform and honor all other obligations, practices and policies relating to their Employees (collectively, the "Employee Obligations"); (b) authorizing, but not requiring the Debtors, in their sole discretion, to pay the accrued but unpaid Medical Provider Obligations (as defined below); and (c) authorizing and directing the Debtors' financial institutions (the "Banks") to receive, process, honor and pay checks presented for payment or electronic payment from Debtors' payroll account and granting authority to re-issue any dishonored checks relating to the Employee Obligations and with respect thereto (the "Motion"). In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION; VENUE; STATUTORY BASES FOR RELIEF

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.). This is a core proceeding pursuant to 28 U.S.C § 157(b). Venue of this case and proceeding is proper in this district pursuant to 28 U.S.C §§ 1408 and 1409.

2. The relief sought in this Motion is based upon the Bankruptcy Code §§ 105(a), 363(b), 507(a)(4), 507(a)(5) and 507(a)(8).

## BACKGROUND

3. On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief Chapter 11 of the Bankruptcy Code. The Debtors have requested that the cases be jointly administered for procedural purposes only.

4. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee, examiner, or official committee of unsecured creditors has been appointed.

5. Corporation, a not-for-profit, tax-exempt entity is the parent corporation of North General. North General is a not-for-profit 200-bed community hospital located in upper Manhattan that has serviced the communities of East and Central Harlem since the 1970s. D&TC is a not-for-profit, tax-exempt entity, wholly dependent on and supported by North General. D&TC operates at North General. It was established to deliver enhanced outpatient primary care services for adults and children, as well as programs and services specializing in diabetes treatment, pediatric weight management, cardiovascular services, a women's health center, a school-based health program and an alcohol treatment center.

6. East and Central Harlem are economically poor and working class communities populated primarily by Latinos and African-Americans. Relative to the rest of New York City, East and Central Harlem is inhabited by traditionally underserved populations living at higher levels of poverty who suffer disproportionately from increased rates of mortality due to common illnesses and treatable diseases. Residents in these communities rank among the bottom ten New York City neighborhoods and experience below average scores for general health, maternal and

child health, infectious disease (including pneumonia, influenza and HIV/AIDS) and chronic disease (including heart disease, diabetes and lung diseases). The Debtors' existence has been vital to providing the residents of Harlem with the health services they critically require

7. From its inception North General faced a systemic problem of undercapitalization and is burdened with a debt-load vastly disproportionate to its ability to service such debt. North General is simply too small and its inpatient volumes too low for it to carry the financial obligations it has incurred.

8. As of May 31, 2010, North General's total assets equal approximately $67 million of which approximately $22 million is current, $12 million is limited noncurrent, $2 million is other long term and $31 million is property, plant and equipment-net.

9. Moreover, as of May 31, 2010, North General's obligations include $135 million of mortgage debt, which is categorized as a current liability, $55 million in restructuring loans and $103 million of other obligations which includes $19 million of interest on capital indebtedness. Total outstanding liabilities at May 31, 2010 are approximately $293 million. The Debtors' net asset deficiency at May 31, 2010 is approximately $226 million.

10. Detailed information regarding the Debtors' history, business, capital structure, finances, and the circumstances leading to these Chapter 11 filings is set forth in the Affidavit of Dr. Samuel J. Daniel M.D. pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York ("Local Bankruptcy Rules") in Support of First Day Motions and Applications, filed contemporaneously herewith (the "Daniel Affidavit").

## WAGES AND SALARIES

11. As of the Petition Date, the Debtors employed approximately 1,000 employees,

comprised of approximately 916 full-time and 84 part-time workers[1] and the independent contractors that provide medical, security and other services to the Debtors' patients.

12. . The union employees are paid weekly and the non-union employees are paid bi-weekly, with each payroll being made five (5) days after the end of its respective pay period [UPDATE]. The average weekly payroll for the union employees is approximately $_____, and the average bi-weekly payroll for the non-union employees is approximately $_____. In addition, certain management personnel are paid bi-weekly with the average payroll being $_____. Thus, the aggregate amount of wages paid to union employees, non-union employees and certain management personnel (collectively, the "Employees") is approximately $_____ every two (2) weeks. The last payroll for union employees and management personnel covered salaries and wages through _____, 2010 and the last payroll for non-union employees covered wages through _____, 2010. Consequently, as of the Petition Date, the only wage and salary obligations owed by the Debtors to the Employees would be amounts owed on account of services provided by the Employees since _____ and _____, 2010, in the aggregate amount of approximately $_____.

13. It is also possible that checks that have been previously issued to the Employees on account of Employee Obligations may have not yet been presented for payment or may have not yet cleared through the banking system. Thus, the Debtors request that they be authorized, in their sole discretion, to pay the aggregate amount of accrued wages and salaries that have not yet been paid to the Employees for periods prior to the Petition Date, and that the Debtors' bank be authorized and directed to honor or send all checks or wire transfers, as the case may be, for all prepetition wages that have either already been sent on behalf of the Employees but not yet

---

[1] Approximately 70% of the Debtors' employees belong to the local chapter of the Service Employees International Union ("Local 1199"), and approximately 5% belong to the Committee of Interns and Residents/SEIU ("CIR")

presented for payment or have yet to clear through the banking system.

## PAYROLL WITHHOLDINGS

14. The Debtors are required by law to withhold from their Employees' wages all applicable federal, state, and local income taxes, state unemployment taxes, and social security and Medicare taxes, and in certain instances, to pay expenses related thereto (collectively, the "Trust Fund Taxes"). The Debtors also are required to remit the Trust Fund Taxes to the appropriate taxing authorities. In addition, the Debtors make deductions from the Employees' paychecks for garnishments, support payments, and other similar programs, and to make payments on behalf of the Employees for parking and to various benefit providers including, among others, Transitchek, and the 1199 Credit Union for savings programs, insurance and tax-deferred annuity plans, 403(b) retirement plan, union benefits and uniform allowances (collectively, the "Deductions" and together with the Trust Fund Taxes, the "Withholdings"). The Debtors transfer such Deductions to the appropriate government agencies and/or employee benefit providers in accordance with the payment schedules established by such agencies and/or providers.

15. For union employees and management, approximately $_____ in the aggregate is withheld and then transferred to the appropriate governmental agencies and/or benefit providers. For non-union employees, approximately $_____ in the aggregate is withheld and then transferred to the appropriate governmental agencies and/or benefit providers. As of the Petition Date, the Debtors have not yet transferred all Withholdings, and some transfers made may be currently outstanding or may have not yet cleared through the banking system. Because the Withholdings are not property of the Debtors' estates, but rather of each individual Employee, by this Motion, the Debtors request that they be authorized but not required to (a)

transfer any Withholdings relating to the period prior to the Petition Date to the appropriate agencies and/or benefit providers in the ordinary course of business, and (b) continue to withhold the Withholdings in the ordinary course of business and make the required transfers of such Withholdings to the appropriate agencies and/or benefit providers on a going-forward basis.

## EMPLOYEE REIMBURSEMENTS

16. The Debtors customarily reimburse their Employees for business expenses incurred in connection with services rendered for the benefit of the Debtors, including, without limitation, those relating to meals, travel, and other ordinary course reimbursable employee business expenses. Expense reimbursement requests for prepetition business expenses may be currently outstanding or may have been made but have not yet been processed. The Debtors estimate that approximately $_____ of such business expenses remain unpaid. The Debtors respectfully request that they be authorized, in their sole discretion, to pay such amounts in the ordinary course of business.

## EMPLOYEE BENEFITS

17. Like most major businesses, the Debtors provide their Employees with certain general welfare benefits, including, without limitation, medical, dental, vision, life insurance and other insurance coverage. These additional benefits are an integral and important part of each Employee's total compensation package. Interruption of such additional benefits would seriously disrupt the morale of the Employees and would undermine the Debtors' efforts through the Chapter 11 process. Thus, the Debtors request authority to pay, in their sole discretion, certain prepetition amounts attributable to such benefits from time to time, as and when such amounts become due in the ordinary course of business.

18. With respect to their medical insurance, the Debtors are self-insured and utilize _____ for their non-union Employees [UPDATE]. With respect to their dental benefits, the Debtors use _____ and _____ for non-union employees [UPDATE]. The Debtors also provide vision coverage for non-union employees through a self administered/self insured plan and group life insurance to all non-union employees through _____ [UPDATE]. The Debtors and their non-union employees contribute to the annual premiums for certain of the medical insurance and dental plans. Medical, vision, dental and life insurance benefits for union employees represented by Local 1199, CIR/SEIU are administered by union affiliated welfare plans. The Debtors also provide optional short term disability insurance through _____, and optional long-term disability through _____ for both union and non-union employees [UPDATE]. The total average monthly premium and payments that the Debtors pay on behalf of their Employees for the foregoing benefits and into the applicable benefit plans is approximately $___ million [UPDATE]. Accordingly, by this Motion, the Debtors request authority, in their sole discretion, to pay, from time to time, as and when due, covered benefits premiums and expenses on account of prepetition claims covered by the foregoing medical plans and insurance policies.

## VACATION AND OTHER LEAVE

19. Under the Debtors' existing vacation policy, Employees are generally eligible for two (2) to six (6) weeks of vacation per year based on the length of their tenure with the Debtors. Vacation time is accrued by Employees over the course of each year. [UPDATE] Employees may use accrued vacation time during the year, at which point the Employee is paid during such vacation period. Employees who have accrued vacation time are not entitled to receive the cash value except that Employees are generally entitled to compensation for earned vacation time

when such time is taken, and upon termination of employment, voluntary resignation or retirement, subject to policy limits. The Debtors believe it is appropriate to allow the Employees to take vacation accrued as of the Petition Date and thereafter in the ordinary course and in accordance with the Debtors' policies and practices established prior to the Petition Date.

20. The Debtors are not seeking authorization to pay accrued vacation time to employees that leave the Debtors during these Chapter 11 cases.

21. Sick time and personal time are accrued by Employees over the course of each year. An Employee can use accrued sick time and/or personal time during the year, at which point the Employee is paid during such period. Employees who have accrued sick time and/or personal time are not entitled to receive the cash value except that Employees are generally entitled to compensation for earned sick time and/or personal time when such time is taken. The Debtors believe it is appropriate to allow the Employees to take sick time and/or personal time accrued as of the Petition Date, and thereafter in the ordinary course and in accordance with the Debtors' policies and practices established prior to the Petition Date.

## BANK ACCOUNTS AND ADP

22. Prior to the Petition Date, the Debtors issued payroll checks drawn from _____'s payroll accounts at _____ Bank [UPDATE]. The Debtors' payroll is processed internally with the exception of certain management payroll, which is administered by Automatic Data Processing, Inc. ("ADP"). In order to give effect to the requested relief, the Debtors request that the Court provide specific authorization to the Bank and ADP to honor and fund, as the case may be, payroll checks, expense checks, medical claims, and all payroll related wire payments drawn on the Debtors' accounts or otherwise. The Debtors have sufficient funds in their respective accounts to enable them to pay in full the Employee Obligations for which authorization is

{10439073:3}

9

sought herein. Accordingly, the Bank will not be prejudiced by the entry of an order directing them to honor checks or fund transfer requests to pay such amounts.

## MEDICAL PROVIDER OBLIGATIONS

23. To supplement their respective workforce, the Debtors utilize the services of certain doctors and other medical providers (the "Medical Providers") who are not considered employees of the Debtors, to provide necessary services relating to the operation of the Debtors' businesses. These Medical Providers provide essential and critical medical services related to among others, neurology, neurosurgery, gastroenterology, dermatology, ophthalmology, anesthesia, obstetrics, pediatrics, geriatrics, radiology, emergency room, physical therapy, and family practice. Payment to each of the Medical Providers, and/or their related professional corporations varies according to the terms of each Medical Provider's contract with the Debtors.

24. It would be difficult, time-consuming, and expensive to replace these Medical Providers who work closely with the Debtors' Employees and are considered an important part of the Debtors' team due to their knowledge of the Debtors' operations and patients. The Debtors estimate that, as of the Petition Date, their accrued and unpaid obligations to the Medical Providers total approximately $265,000 [UPDATE] (the "Medical Provider Obligations"). The Debtors believe that it is critical that they receive authority to pay the Medical Provider Obligations because the services that the Medical Providers provide are vital to the Debtors' continued ability to offer competent medical care to the communities they serve and are essential to the Debtors' continued operation.

25. It is possible that checks that have been previously issued to Medical Providers may be currently outstanding or may have not yet cleared through the banking system. The Debtors therefore request that they be authorized to, in their sole discretion, honor and pay in full

the accrued but unpaid Medical Provider Obligations, and that the Bank be authorized and directed to honor or send all checks or wire transfers, as the case may be, for all Medical Provider Obligations that have either already been sent on behalf of the Medical Providers but not yet presented for payment or have yet to clear through the banking system.

## BASIS FOR RELIEF REQUESTED

26. Bankruptcy Code § 507(a)(4) grants a priority claim of up to $10,000 for wages, salaries, or commissions, including vacation, severance, and sick leave pay, earned by an individual within the 180 days prior to the filing of a bankruptcy petition. In addition, Bankruptcy Code § 507(a)(5) grants a priority claim for contributions to employee benefit plans arising from services rendered within the 180 days before filing of the petition to the extent that the $10,000 ceiling per employee on priority wage claims is not reached.

27. Bankruptcy Code § 363(b)(1) provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). And section Bankruptcy Code § 105(a) empowers the court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, because most (if not all) such priority claims may be paid in full under a plan of reorganization, unless the holders otherwise agree, this Court is authorized to grant the relief requested.

28. The Employees and Medical Providers are essential to the continued operation of the Debtors' businesses and successful reorganization thereof. The Employees' morale directly affects their effectiveness and productivity. Consequently, it is critical that the Debtors continue, in the ordinary course, those personnel policies, programs, and procedures that were in effect prior to the Petition Date with respect to the Employee Obligations. If the checks issued and

electronic fund transfers requested in payment of any of the Employee Obligations have been or are dishonored, or if such obligations are not timely paid post-petition, the Debtors believe that many of the Employees will suffer extreme personal hardship and may be unable to pay their daily living expenses. These circumstances undoubtedly will adversely affect their performance and similarly impact the Debtors' ability to provide necessary and quality medical care and their reorganization efforts to the detriment of all parties in interest.

29. In addition, it would be inequitable to require the Debtors' Employees and Medical Providers to bear personally the cost of any business expenses they incurred prepetition, for the benefit of the Debtors, with the understanding that they would be reimbursed. The Debtors submit that it is critical that they be permitted to continue their pre-petition policies of allowing their Employees to incur reasonable and necessary business-related expenses and seek reimbursement therefore by submitting appropriate requests for cash disbursements and receipts evidencing such out-of-pocket disbursements.

30. Payment of all Employee Obligations in accordance with the Debtors' prepetition business practices is in the best interests of the Debtors' estates, their creditors, and all parties in interest and will enable the Debtors to continue to operate their businesses in an economic and efficient manner without disruption. The Employees and Medical Providers are central to the Debtors' operations and are vital to their restructuring. The total amount sought herein to be paid is relatively modest in comparison to the size of the Debtors' overall business and the importance of the Employees and Medical Providers to the Debtors' reorganization efforts.

31. The Debtors believe that, as of the Petition Date, they do not owe more than $10,000 [UPDATE] in salary or wages to any of their Employees and, by this Motion, the

Debtors are not requesting authority to pay salary or wages in excess of $10,000 [UPDATE].[2] Accordingly, the Debtors believe that, substantially all, if not all, of the Debtors' obligations with respect to the Employee Obligations constitute priority claims. The Debtors submit that payment of the outstanding Employee Obligations at this time is necessary and appropriate and is authorized under section 105(a) pursuant to the "necessity of payment" doctrine, under which courts often allow the immediate payment of pre-petition claims where the payments are essential to the debtor's continued operations even though the Bankruptcy Code may not explicitly authorize payment. *See In re Chateaugay Corp.*, 80 B.R. 279, 285-287 (S.D.N.Y. 1987); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also, e.g., In re Just for Feet Inc.*, 242 B.R. 821, 824 (D. Del. 1999); *In re Columbia Gas System, Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that a debtor may pay a class of prepetition creditors in advance of a confirmed plan if essential to the continued operation of the business).

32. Courts have recognized that invocation of the "necessity of payment" doctrine is particularly appropriate where a debtor's employees must be paid on time to assure their continued service and loyalty during a Chapter 11 proceeding. Numerous bankruptcy courts, including many in this circuit, have approved payment of prepetition claims for compensation, benefits, and expense reimbursements. *See e.g., In re Saint Vincents Catholic Medical Centers of New York d/b/a Saint Vincent Catholic Medical Centers, et al.*, Case No. 05-14945 (PCB) (Bankr. S.D.N.Y. July 5, 2005); *In re Winn-Dixie, Inc., et al.*, Case No. 05-11063 (RDD) (Bankr. S.D.N.Y. March 15, 2005); *In re Tower Automotive, Inc.*, Case No. 05-10578 (ALG) (Bankr.

---

[2] A few Employees may be owed amounts above the statutory cap when the cash value of accrued but unused vacation, sick and personal time is added to the salary and wages owed to such Employees. As stated above, however, the Debtors do not seek to make lump sum payments on account of such time but rather the Debtors seek to allow the Employees to continue to take such time in the ordinary course. This necessity of payment doctrine, first articulated by the United States Supreme Court in *Miltenberger v. Logansport, C&SW.R. Co.*, 106 U.S. 286, 311-312 (1882), recognizes the existence of judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor.

S.D.N.Y. Feb. 3, 2005); *In re Loral Space & Communications Ltd., et al.*, Case No. 03-41710 (RDD) (Bankr. S.D.N.Y. July 15, 2003); *In re Recoton Corp., et al.*, Case No. 03-12180 (ALG) (Bankr. S.D. N.Y. April 10, 2003); *In re Metro Affiliates, Inc., et al.*, Case No. 02-42560 (PCB) (Bankr. S.D.N.Y. Aug. 16, 2002); *In re Formica Corporation, et al.*, Case No. 02-10969 (BRL) (Bankr. S. D.N.Y. March 5, 2002).

33. With respect to the Trust Fund Taxes, the payment of such taxes will not prejudice the estates' other creditors because the relevant taxing authorities would hold priority claims under Bankruptcy Code § 507(a)(8). Furthermore, the monies payable for Trust Fund Taxes are not property of the Debtors' estates, and as such, the Bankruptcy Code does not prohibit the Debtors from paying such taxes. *See Begier v. Internal Revenue Serv.*, 496 U.S. 53, 59 (1990).

34. It is respectfully submitted that any delay in paying the compensation and reimbursement owed to Employees and Medical Providers, or providing them with any of the other above-described benefits, such as medical and related benefits, would severely disrupt the Debtors' relationships with their Employees and Medical Providers, irreparably impairing their morale at the very time when their dedication, confidence, and cooperation are most critical to the Debtors.

35. For the reasons stated, the Debtors submit that authorization of the payments sought herein is in the best interests of the Debtors, their creditors, and all parties in interest. Accordingly, the Debtors respectfully request that the Court grant the relief requested herein.

36. The Debtors' request for authority to pay the Employee Obligations is not to be deemed an assumption or adoption of any agreements or policies providing for such Employee Obligations. The Debtors are in the process of reviewing these matters and reserve all of their

rights with respect to the assumption or rejection of any executory contracts.

## NOTICE

37. Notice of this Motion has been given via facsimile, hand delivery, electronic mail, or overnight mail to: (a) the Office of the United States Trustee; (b) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (c) the Debtors' six (6) largest secured creditors on a consolidated basis; (d) counsel for the Debtors' proposed post-petition lender; (e) the Office of the United States Attorney; (f) the Dormitory Authority of the State of New York; (g) the Office of New York State Attorney General; (h) the New York State Department of Health; (i) the Internal Revenue Service, (j) the Department of Law, City of New York, and (k) all those who have entered an appearance in this case pursuant to Bankruptcy Rule 2002. The Debtors submit that under the circumstances no other notice need be given.

## WAIVER OF MEMORANDUM OF LAW

38. Pursuant to Local Bankruptcy Rule 9013-1 (b), because there are no novel issues of law presented herein, the Debtors respectfully request that this Court waive the requirement that the Debtors file a memorandum of law in support of this Motion. The Debtors reserve the right, however, to file a memorandum in response to any objection that may be filed.

39. No prior request for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto as Exhibit "A", (a) authorizing, but not requiring, the Debtors, in their sole discretion, to (i) honor and pay accrued but unpaid pre-petition wages, salaries, bonuses, commissions, withholding taxes, garnishments and employee benefits to, or on behalf of, their Employees in accordance with existing company policies and practices

established prior to the Petition Date; (ii) reimburse prepetition Employee business expenses; and (iii) perform and honor all other obligations, practices, and policies relating to their Employees established prior to the Petition Date; (b) authorizing (but not directing) the Debtors, in their sole discretion, to pay the accrued but unpaid Medical Provider Obligations; (c) authorizing and directing the Banks to honor checks with respect thereto; and (d) granting such other and further relief as may be just and proper.

Dated: New York, New York
      May   , 2010

**WINDELS MARX LANE & MITTENDORF, LLP**

By: _____
Charles E. Simpson (csimpson@windelsmarx.com)
**A Member of the Firm**

156 West 56th Street
New York, New York 10019
(212) 237-1000

Proposed Attorneys for North General Hospital and
North General Diagnostic and Treatment Center
Debtors-in-Possession