# EXHIBIT 7

# ADDENDUM A:
# ENGAGEMENT LETTER

John A. Katinos, MAI
Senior Director



Cushman & Wakefield, Inc.
1290 Avenue of the Americas, 9th Floor
New York, NY 10104
212 841-5061 Tel
212 479-1820 Fax
john.a.katinos@cushwake.com

10-12003-9325

July 29, 2010

Mr. John Maher
EVP/CFO
NORTH GENERAL HOSPITAL
1879 Madison Avenue
New York, NY 10035

Re: North General Hospital and Annex Building
1879 and 1824 Madison Avenue
New York, New York 10035

Dear Mr. Maher:

Thank you for requesting our proposal for appraisal services. This proposal letter will become, upon your acceptance, our letter of engagement to provide the services outlined herein.

## TERMS OF ENGAGEMENT

### I. PROBLEM IDENTIFICATION

| | |
|---|---|
| **The Parties To This Agreement:** | The undersigned Cushman & Wakefield affiliated company and NORTH GENERAL HOSPITAL (herein at times referred to as "Client") |
| **Intended Users:** | The Client, Dormitory Authority of the State of New York (DASNY)/New York State Department of Health (NYS DOH), and Health and Hospitals Corporation-City of New York (HHC) are the only identified Intended Users of the appraisal. The appraisal may not be distributed to or relied upon by other persons or entities. |
| **Intended Use:** | Internal review by the Client for internal business decisions. |
| **Type of Opinion and Rights Appraised:** | Market value of the Fee Simple Interest based on the properties' highest and best use. We will also estimate the going concern and alternative medical use value for the Hospital building. |
| **Date Of Value:** | • Date of Inspection |
| **Subject of the Assignment and Relevant Characteristics:** | The two properties to be appraised are; North General Hospital, a 9-story 280,000 square foot building with approximately 200 beds, and the Annex Building, a 30,000 square foot medical office building. The properties are located in New York, New York. |
| **Assignment Conditions:** | The assignment will not incorporate any extraordinary assumptions or hypothetical conditions. |

## II. ANTICIPATED SCOPE OF WORK

**USPAP Compliance:** The undersigned Cushman & Wakefield affiliated company and/or its designated affiliate or subsidiary (herein at times "C&W") will develop an appraisal in accordance with USPAP and the Code of Ethics and Certification Standards of the Appraisal Institute.

**General Scope of Work:**
- Property Inspection to the extent necessary to adequately identify the real estate
- Research relevant market data, in terms of quantity, quality, and geographic comparability, to the extent necessary to produce credible appraisal results
- Consider and develop those approaches relevant and applicable to the appraisal problem. Based on our discussions with the Client, we anticipate developing the following valuation approaches:
- Sales Comparison Approach
- Income Capitalization Approach

## III. REPORTING AND DISCLOSURE

**Scope of Work Disclosure:** The actual Scope of Work will be reported within the report.

**Reporting Option:** The appraisal will be communicated in a Self-Contained report.

**Fee:** $25,000. The entire fee is due in advance. The Client shall be solely responsible for C&W's fees. Acknowledgement of this obligation is made by the countersignature to this agreement by an authorized representative.

**Additional Expenses:** Fee quoted is inclusive of expenses related to the preparation of the report.

**Report Copies:** The final report will be delivered in electronic format. Up to three hard copies will be provided upon request.

**Start Date:** The appraisal process will initiate upon receipt of signed agreement, applicable retainer, and the receipt of the property specific data.

**Acceptance Date:** This proposal is subject to withdrawal if the engagement letter is not executed by the Client within four (4) business days.

**Draft Report Delivery:** Within thirty (30) days of receipt of your written authorization to proceed, assuming prompt receipt of necessary property information. Payment of the fee shall be due in advance.

**Changes to Agreement:** The identity of the Client, intended users, or intended use; the date of value; type of value or interest appraised; or property appraised cannot be changed without a new agreement.

## II. ANTICIPATED SCOPE OF WORK

**USPAP Compliance:** The undersigned Cushman & Wakefield affiliated company and/or its designated affiliate or subsidiary (herein at times "C&W") will develop an appraisal in accordance with USPAP and the Code of Ethics and Certification Standards of the Appraisal Institute.

**General Scope of Work:**
- Property Inspection to the extent necessary to adequately identify the real estate
- Research relevant market data, in terms of quantity, quality, and geographic comparability, to the extent necessary to produce credible appraisal results
- Consider and develop those approaches relevant and applicable to the appraisal problem. Based on our discussions with the Client, we anticipate developing the following valuation approaches:
- Sales Comparison Approach
- Income Capitalization Approach

## III. REPORTING AND DISCLOSURE

**Scope of Work Disclosure:** The actual Scope of Work will be reported within the report.

**Reporting Option:** The appraisal will be communicated in a Self-Contained report.

**Fee:** $25,000. The entire fee is due in advance. The Client shall be solely responsible for C&W's fees. Acknowledgement of this obligation is made by the countersignature to this agreement by an authorized representative.

**Additional Expenses:** Fee quoted is inclusive of expenses related to the preparation of the report.

**Report Copies:** The final report will be delivered in electronic format. Up to three hard copies will be provided upon request.

**Start Date:** The appraisal process will initiate upon receipt of signed agreement, applicable retainer, and the receipt of the property specific data.

**Acceptance Date:** This proposal is subject to withdrawal if the engagement letter is not executed by the Client within four (4) business days.

**Draft Report Delivery:** Within thirty (30) days of receipt of your written authorization to proceed, assuming prompt receipt of necessary property information. Payment of the fee shall be due in advance.

**Changes to Agreement:** The identity of the Client, intended users, or intended use; the date of value; type of value or interest appraised; or property appraised cannot be changed without a new agreement.

| | |
|---|---|
| **Prior Services Disclosure:** | The engaging or principal appraiser has not performed a previous appraisal of the subject property involving the subject property within the three years prior to this assignment. |
| **Conflicts of Interest:** | C&W adheres to a strict internal conflict of interest policy. If we discover in the preparation of our appraisal a conflict with this assignment we reserve the right to withdraw from the assignment without penalty. |
| **Further Conditions of Engagement:** | The Conditions of Engagement attached hereto are incorporated herein and are part of this letter of engagement. |

Thank you for calling on us to render these services and we look forward to working with you.

**CUSHMAN & WAKEFIELD, INC.**

John A. Katinos, MAI
Senior Director

cc: Matthew Mondanile
Robert Nardella
John Busi
Brian Corcoran
Gerald Rasmussen

**AGREED:**
**CLIENT: NORTH GENERAL HOSPITAL**

By: _____ Date: 7/30/10
Mr. John Maher
Title: EVP/CFO

E-mail Address/Phone & Fax Nos.: _____

## CONDITIONS OF ENGAGEMENT

1) The Client and any Intended Users identified herein should consider the appraisal as only one factor together with its independent investment considerations and underwriting criteria in its overall investment decision. The appraisal cannot be used by any party or for any purpose other than as specified in this engagement letter.

2) Federal banking regulations require banks and savings and loan associations to employ appraisers where a FIRREA compliant appraisal must be used in connection with mortgage loans or other transactions involving federally regulated lending institutions, including mortgage bankers/brokers. Because of that requirement, this appraisal, if ordered independent of a financial institution or agent, may not be accepted by a federally regulated financial institution. This appraisal will be prepared in accordance with the Uniform Standards of Professional Appraisal Practice of The Appraisal Foundation, the Standards of Professional Practice and the Code of Ethics of the Appraisal Institute.

3) The appraisal report will be subject to our standard Assumptions and Limiting Conditions, which will be incorporated into the appraisal. All users of the appraisal report are specifically cautioned to understand any Extraordinary Assumptions and Hypothetical Conditions which may be employed by the appraiser and incorporated into the appraisal.

4) The appraisal report or our name may not be used in any offering memoranda or other investment material without the prior written consent of C&W, which may be given at the sole discretion of C&W. Any such consent, if given, shall be conditioned upon our receipt of an indemnification agreement from a party satisfactory to us and in a form satisfactory to us. Furthermore, Client agrees to pay the fees of C&W's legal counsel for the review of the material which is the subject of the requested consent. If the appraisal is referred to or included in any offering material or prospectus, the appraisal shall be deemed referred to or included for informational purposes only and C&W, its employees and the appraiser have no liability to such recipients. C&W disclaims any and all liability to any party other than the party which retained C&W to prepare the appraisal.

5) In the event the Client provides a copy of this appraisal to, or permits reliance thereon by, any person or entity not an identified Intended User at the time of the assignment and authorized by C&W in writing to use or rely thereon, Client hereby agrees to indemnify and hold C&W, its affiliates and the respective shareholders, directors, officers and employees, harmless from and against all damages, expenses, claims and costs, including attorney's fees, incurred in investigating and defending any claim arising from or in any way connected to the use of, or reliance upon, the appraisal by any such unauthorized person or entity.

6) The balance of the fee for the appraisal will be due upon delivery of a report. Payment of the fee is not contingent on the appraised value, outcome of the consultation report, a loan closing, or any other prearranged condition. Additional fees will be charged on an hourly basis for any work, which exceeds the scope of this proposal, including performing additional valuation scenarios, additional research and conference calls or meetings with any party, which exceed the time allotted by C&W for an assignment of this nature. If we are requested to stop working on this assignment, for any reason, prior to our completion of the appraisal, C&W will be entitled to bill the Client for the time expended to date at C&W's hourly rates for the personnel involved.

7) If C&W or any of its affiliates or any of their respective employees receives a subpoena or other judicial command to produce documents or to provide testimony involving this assignment in connection with a lawsuit or proceeding, C&W will use reasonable efforts to notify the Client of our receipt of same. However, if C&W or any of its affiliates are not a party to these proceedings, Client agrees to compensate C&W or its affiliate for the professional time and reimburse C&W or its affiliate for the actual expense that it incurs in responding to any such subpoena or judicial command, including attorneys' fees, if any, as they are incurred. C&W or its affiliate will be compensated at the then prevailing hourly rates of the personnel responding to the subpoena or command for testimony.

8) By signing this agreement Client expressly agrees that its sole and exclusive remedy for any and all losses or damages relating to this agreement or the appraisal shall be limited to the amount of the appraisal fee paid by the Client. In the event that the Client, or any other party entitled to do so, makes a claim against C&W or any of its affiliates or any of their respective officers or employees in connection with or in any way relating to this engagement or the appraisal, the maximum damages recoverable from C&W or any of its affiliates or their respective officers or employees shall be the amount of the monies actually collected by C&W or any of its affiliates for this assignment and under no circumstances shall any claim for consequential damages be made.

9) It is acknowledged that any opinions and conclusions expressed by the professionals of C&W or its affiliates during this assignment are representations made as employees and not as individuals. C&W's or its affiliate's responsibility is limited to the Client, and use of our product by third parties shall be solely at the risk of the Client and/or third parties.

10) The fees and expenses shall be due C&W as agreed in this letter. If it becomes necessary to place collection of the fees and expenses due C&W in the hands of a collection agent and/or an attorney (whether or not a legal action is filed) Client agrees to pay all fees and expenses including attorney's fees incurred by C&W in connection with the collection or attempted collection thereof.

